UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID HALADAY, a single man, MATTHEW DARE, a single man,<br><br>Plaintiff,<br><br>v.<br><br>THURSTON COUNTY FIRE DISTRICT NO. 1, UNITED STATES POSTAL SERVICE, a Government Agency with a branch located in Centralia, Washington,<br><br>Defendant. | Case No. C04-5395<br><br>ORDER GRANTING DEFENDANT THURSTON COUNTY FIRE DISTRICT NO. 1's MOTION FOR SUMMARY JUDGMENT |

Before the court is the motion of Defendant Thurston County Fire District No. 1 ("District") for summary judgment dismissal of all claims of Plaintiffs David Haladay and Matthew Dare against the District. Haladay claims that the District discriminated against him on the basis of his physical disabilities in violation of the ADA, and that he has suffered severe emotional distress as a result. Dare clams that the District discriminated against him on the basis of his partnership relationship with Haladay.

I.

*Factual Background*

The District provides protection services in Thurston County Fire District #1 and surrounding communities via mutual aid agreements. The District employs eleven paid personnel,

ORDER - 1

including five full-time firefighters, and 45 volunteers, including volunteer firefighters, medical crew, receptionist and support staff.

Plaintiffs have lived together at all times relevant to this lawsuit. They met in January 2003, moved in together soon thereafter, and married in Canada in January 2004.

Since 1990 Haladay has been self-employed and operating his own business in Centralia, the Centralia B&D Market, Inc. (B&D), a discount grocery and convenience store. Due to a injury during his birth, Haladay has a speech impediment, minor limp, and minor nerve damage in his left hand. Haladay is not restricted from performing his duties at his business or in any physical activities. Dare has worked as a manager at the B&D Market since September 2003.

Dare became a volunteer firefighter with the District in 2001. Dare successfully passed a testing and interview screening process and completed a six-month training course. On June 23, 2003, Dare applied for a full-time Firefighter/ EMT position with the District, the only such position available at that time. Dare ranked third among the applicants. In January 2004, the District Chief informed Dare that he had not been selected for the position, but would remain on an active list to be considered for future vacancies. The candidate ultimately selected for the position had acted as a volunteer firefighter for approximately 13 years and was the top scoring candidate among those tested, including Dare.

By letter dated March 11, 2004, Dare requested a leave of absence as a District volunteer based on his belief that the District had discriminated against Haladay, stating:

> Because of the current events and testimonies with regards to both David L. Haladay and myself I feel that it is in the best interest for both my safety as well as David's that I request a leave of absents [sic]. I find the recent actions and decisions which the command has implemented very disturbing, discriminating and harassing. I have been approached several times by fire department staff to discuss issues that involve Mr. Haladay which are confidential in nature and due to respect of all parties involved I will not divulge information.

ORDER - 2

Chief Scott granted Dare's request and by letter, asked him the length of time Dare believed he may be on his leave of absence. Dare did not respond to the Chief's inquiry.

Previously, in approximately June of 2003, Haladay had applied to become a volunteer with the District. By letter dated January 17, 2004, the District confirmed Haladay's attendance for a written test and a physical abilities test. The letter further informed Haladay that he would be evaluated "on such aspects of firefighting as climbing a ladder, carrying equipment, wearing of an air pack and pulling fire hose. Loose comfortable clothing are suggested."

Haladay completed the written test but did not take the physical abilities test. Nevertheless, he was invited for an oral interview. Haladay alleges that at the time he was to take the physical test, he stated to Captain Ben Wilburn that he had "never worn bunker gear or had air tanks on [his] back and [he didn't] know if [he could] complete the test in the time limit," and Captain Wilburn responded that he did not have to take the test. Haladay did not ask to take a revised physical test nor did he ask for any accommodation.

Haladay and Dale testified that, on or about February 20, 2004, volunteer Captain Rex Slemp told them that Haladay's application had been discussed as to tasks, including data entry, that Haladay could perform at the fire station. Captain Slemp allegedly then stated that "if nothing else, [Haladay could] shine his boots."

By letter dated March 8, 2004, Haladay advised Chief Scott that he was withdrawing his application. Haladay complained about the length of time it had taken the District to process his application. With regard to the physical test, Haladay stated:

> I took the written test, but not the physical test. The letter that was sent to me just days before the test did not give any explanation of what kind of physical test would be performed. It was my understanding at that time that non-firefighter volunteers could supplement the trained firefighters and that I could at a later date reapply for a volunteer firefighter position if I decided I was interested in that kind of work.

ORDER - 3

1  At the time Haladay withdrew his application, it had not been rejected by the District and
2  remained open and pending. By letter dated March 11, 2004, Chief Scott invited Haladay to meet
3  with him to discuss ways in which Haladay would assist the District, including "incident reporting,
4  emergency scene accountability, and training." Haladay did not respond to the letter. In response to
5  Haladay's withdrawal of his application and letter dated March 8, 2004, Chief Scott sent a second
6  letter to Haladay, in which he apologized for the inefficient handling of Haladay's application and
7  condemned any inappropriate comments by any district employee. Chief Scott also stated that the
8  District could use Haladay's skills in various capacities in the department and asked that Haladay
9  meet with him to discuss withdrawal of his application. Haladay did not respond to the second letter.

## II.

### *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56( c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts which show a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Summary judgment is proper if the moving party shows that there is no evidence which supports an essential element to the non-moving party's claim. *Celotex*, 477 U.S. 317 (1986). The substantive law governs whether a fact is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

ORDER - 4

**A.    *Claims of Sexual Discrimination and/or Sexual Orientation Discrimination*** [1]

Under Title VII, a plaintiff must file a charge of discrimination with the EEOC before pursuing a lawsuit.  42 U.S.C. § 2000e-5(b).  A party fails to exhaust administrative remedies when that party fails to identify a basis for discrimination in an EEOC charge sufficient enough for the EEOC to determine that it has no reason to investigate or conciliate that claim of discrimination.  *See Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 674-75 (9th Cir. 1998).  Any Title VII claims by Haladay or Dare based on sexual discrimination must be dismissed for failure to exhaust administrative remedies.  Haladay's EEOC charge identified only "disability" as a basis for alleged discrimination.  Haladay has also confirmed that his claim in this lawsuit is only "about physical discrimination."  Dare never filed a charge with the EEOC and states that his claim is a state law claim only, under RCW 49.60.  Dare has confirmed that his claim this lawsuit is "about sexual discrimination."

The only allegation made by Dare is that he was discriminated against because "of his partnership relationship with his roommate," Haladay.  Dare makes no allegation that he was harassed or discriminated against because of his gender.  Dare's evidence is that he was allegedly discriminated against because of his sexual orientation, not his sex.  Such a claim is not actionable under either Title VII or RCW 49.60.  *See,* 42 U.S.C. § 2000e-2(a)(1); *Bibby v. Phila. Coca Cola Bottling Co.*, 260 F.3d 257 (3d Cir. 2001); RCW 49.60.180; *Miguel v. Davis*, 112 Wn. App. 536, 51 P.3d 89 (2002).

Accordingly, summary judgment in favor of the District is appropriate on the claims of Haladay and Dare for sexual discrimination and/or sexual orientation discrimination.

**B.    *Claims of Disability Discrimination Under ADA and Chapter 49.60***

---

[1] Plaintiffs insist that their claim of discrimination is not one of sexual orientation.  Plaintiffs allege, however, that their claims are based on the District's treatment of them because of their partnership relationship, and that they were treated differently because they are gay.

ORDER - 5

To prevail on a discrimination claim under the Americans with Disabilities Act (ADA), a plaintiff must establish that he has a disability, that he is able to perform the essential functions of the job with or without accommodation and that his employer took an adverse employment action because of his disability. *Kees v. Wallenstein*, 161 F.3d 1196, 1199 (9th Cir. 1998). The ADA analysis also applies to Washington claims of disability discrimination. *Id.* at 1199; *Ware v. Mutual Materials Co.*, 93 Wn. App. 639, 647, 970 P.2d 332, *reviewed denied*, 137 Wn.2d 1037, 980 P.2d 1286 (1999).

Far from establishing the existence of a disability, Haladay claims that he is not substantially limited in any "major life activity" and that he has not been precluded from accomplishing anything in his life because of his medical condition. In addition, Haladay's disability claim fails because the District took no adverse employment action against him. Haladay appears to be arguing that the District took too long in processing his application. Undisputed evidence provided by the District establishes that the time spent processing Haladay's application was not unique to him, but was the result of scheduling difficulties, volunteer staff, and operational and political issues extraneous to the application process. Of the 14 applicants who submitted volunteer applications in the spring and summer of 2003, only two were able to attend and complete all of the interviews and testing processes in order to enroll in the fall 2003 academy. Of the remaining 12 applicants, some did not complete the testing for personal reasons, others failed to appear for scheduled interviews or testing, and others did not pass the initial screening process. It is also undisputed that Haladay withdrew his application less than two months after completing the testing process and that Haladay did not respond to the District's letter asking him to reconsider. As a matter of law, the court finds that Haladay has failed to establish that he is disabled or that was the subject of an adverse employment action.[2] Haladay's allegation that the District was never going to let him become a firefighter is

---

[2]Dare argues in his opposition brief that his claim is related to the District's discrimination against him because of his association with Haladay -- with "befriending a person with a perceived

ORDER - 6

merely speculative and is without evidentiary support.

Haladay's claims of disparate treatment are similarly unsupported by the record. Haladay theorizes that the District officers discussed possible tasks for him and decided that he could do data entry around the station. Even if the District officers did so, this does not support a claim for disparate treatment. There is no evidence that Haladay was barred from ever becoming a firefighter. In fact, the evidence indicates that other tasks were being considered for Haladay because he had not taken the physical ability test required of firefighters.

Haladay also claims that he was denied an opportunity to become a volunteer firefighter when the District failed to accommodate his disability. However, in his response to interrogatories, Haladay testified that he made no request for accommodations and was "not aware of any accommodations he would have needed." Haladay also testified that he did not speak to anyone at the District after receiving his notice identifying the aspects of the physical testing.

Assuming the District had a duty to reasonably accommodate Haladay during the testing procedure, Haladay must still show that the District could have provided a specific reasonable accommodation that was medically necessary but failed to do so. *Doe v. Boeing Co.*, 121 Wn.2d 8, 846 P.2d 531, 538 (1993). Haladay does not meet this burden and in fact, testified that he needed no accommodation. Even if the court assumes that an accommodation was needed, Haladay never informed the District (and fails to provide any information here) as to the type of accommodation that could have been provided and that was reasonably necessary for Haladay to complete the testing. Haladay's belief that his stated failure to have worn firefighting gear before testing should have alerted the District to his need for a medically necessary accommodation is conjecture only. There is also no evidence that any of the individuals who took the physical test had previously worn

---

disability." However, Washington law does not protect "able-bodied persons' association with or relation to a disabled person . . . ". *Sedlacek v. Hillis*, 145 Wn.2d 379, 36 P.3d 1014, 1020 (2001).

ORDER - 7

firefighting equipment before taking the test.[3]

### C. Claim of Outrage

To establish a claim for intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) severe emotional distress on the part of the plaintiff. *Washington v. The Boeing Co.*, 105 Wn. App. 1, 19 P.3d 1041, 1050 (2000). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wn.2d 52, 530 P.2d 291, 295 (1975). While the question of whether certain conduct is outrageous is ordinarily for the jury, it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. *Dicomes v. State*, 113 Wn.2d 612, 782 P.2d 1002, 1013 (1989).

Haladay bases his claim of outrage on the alleged disability discrimination that he suffered, but provides no explanation of what conduct was extreme and outrageous nor how the conduct meets the standard of extreme and outrageous. Haladay's claim that his application was processed too slowly does not meet the standard. Also insufficient are the statements allegedly made by Mr. Slemp to Haladay that, "if nothing else [Haladay could] shine [his] boots." Liability for outrage does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities". *Grimsby*, 530 P.2d at 295.

There is also no evidence that any alleged outrageous conduct resulted in severe emotional distress inflicted intentionally or recklessly by the District. Haladay has provided no evidence of

---

[3]The evidence reflects that Haladay knew he could not be hired as a firefighter without having first passed a physical exam. In his letter to Chief Scott, Haladay states that he assumed he could "supplement" trained firefighters as a "non-firefighter" volunteer and reapply later if he was interested. Haladay also testified that he had been told that the physical test would be similar to the test Dare took to qualify for further training as a firefighter. There is no evidence that Haladay was ever prohibited from taking the physical test.

ORDER - 8

receiving medical treatment or medication relating to severe emotional distress. Haladay testified only that it was very stressful not to have been given the chance to become a volunteer and that when he questioned the actions of the fire chief, an emotional and stressful argument ensued between Dare and himself. The court finds this insufficient as a matter of law to support a claim of outrage.

IV.

For the foregoing reasons, the court finds that all claims made by Dare and Haladay against the District should be dismissed.

ACCORDINGLY,

IT IS ORDERED:

(1) Defendant Thurston County Fire District No. 1's motion for summary judgment (Dkt.#29 ) is **GRANTED**;

(2) All claims of Plaintiff David Haladay and Plaintiff Matthew Dare against Defendant are **DISMISSED WITH PREJUDICE**; and

(3) The Clerk of the Court shall enter judgment accordingly.

DATED this 7th day of December, 2005.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 9